FILED

JUN 29 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 17CR 448 |
| | ) | |
| v. | ) | |
| | ) | Violations: Title 18, United States |
| JOSHUA CARLUCCI and | ) | Code, Sections 1001(a)(2), 1512(k) and |
| CHRISTOPHER YOUNG | ) | (c)(2) JUDGE KENNELLY |
| | ) | |

MAGISTRATE JUDGE WEISMAN

**COUNT ONE**

The SPECIAL JULY 2016 GRAND JURY charges:

1. At times material to this indictment:

a. Defendants JOSHUA CARLUCCI and CHRISTOPHER YOUNG owned and operated M2 Interactive Group, Inc., which did business as Momentum Mobile. Momentum Mobile developed applications for mobile devices, such as smartphones. CARLUCCI and YOUNG were the President and Chief Executive Officer, respectively, of Momentum Mobile.

b. Quadrant 4 System Corporation ("QFOR"), an Illinois corporation located at 1501 East Woodfield Road, Suite 205 South, Schaumburg, Illinois, provided proprietary software packages, platforms, and information technology consulting services to customers in various industries, including the healthcare and education industries. Nandu Thondavadi and Dhru Desai were the Chief Executive Officer and Chief Financial Officer, respectively, of QFOR.

c. The United States Securities and Exchange Commission ("SEC") was an agency of the United States government with the primary responsibility of enforcing federal securities laws and regulating the securities industry.

d. QFOR was a public company. As such, federal securities laws required QFOR to provide a detailed report of its financial condition to the SEC on both a quarterly and annual basis, on forms known respectively as a Form 10-Q and Form 10-K. These reports were subsequently made available to the public by the SEC in order to allow investors and prospective investors to examine the financial condition of the company.

e. Pursuant to an Asset Purchase Agreement dated January 1, 2013 ("AP Agreement 1"), QFOR acquired Momentum Mobile. AP Agreement 1 reflected the following acquisition terms: a payment of $100,000, 250,000 shares of QFOR stock, and assumption of approximately $165,000 in Momentum Mobile liabilities. AP Agreement 1 reflected the signature of Nandu Thondavadi, who signed as QFOR's CEO, and the signatures of JOSHUA CARLUCCI and CHRISTOPHER YOUNG, who signed as President and CEO, respectively, of Momentum Mobile.

f. Consistent with AP Agreement 1, QFOR paid JOSHUA CARLUCCI and CHRISTOPHER YOUNG a total of $100,000, and issued 250,000 shares for Momentum Mobile, with the shares split evenly between JOSHUA CARLUCCI and CHRISTOPHER YOUNG.

g. Neither Thondavadi nor Desai sent QFOR's auditor a copy of AP Agreement 1. Instead, in 2013 Thondavadi, without JOSHUA CARLUCCI or CHRISTOPHER YOUNG's knowledge or consent, created a second Asset Purchase Agreement ("AP Agreement 2"), also dated January 1, 2013, that purported to be QFOR's agreement to acquire Momentum Mobile, and inserted the executed signature page from AP Agreement 1 at the end of AP Agreement 2. AP Agreement 2 reflected that QFOR agreed to pay $400,000 in cash and to provide 1,000,000 QFOR shares to acquire Momentum Mobile. AP Agreement 2 did not refer to QFOR assuming any Momentum Mobile liabilities. On or about March 5, 2013, Thondavadi e-mailed AP Agreement 2 to QFOR's auditor.

h. The Form 10-K that QFOR filed for 2013 described QFOR's 2013 acquisition of Momentum Mobile, and reflected the terms set forth in AP Agreement 2.

i. During 2015, the SEC issued a formal order authorizing an investigation of QFOR pursuant to Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934. The SEC investigation, which was called "In the Matter of Quadrant 4 System Corp. (C-08172)," continued during 2016 and 2017. The SEC was investigating whether QFOR and its officers violated certain federal securities laws.

j. On July 14, 2016, the SEC Division of Enforcement mailed materially identical subpoenas related to its investigation of QFOR to JOSHUA CARLUCCI and

CHRISTOPHER YOUNG. The subpoenas were accompanied by materially identical letters that informed CARLUCCI and YOUNG that the SEC had issued a formal order authorizing the following investigation: "In the Matter of Quadrant 4 Systems Corp." The subpoenas required CARLUCCI and YOUNG to produce, among other things, the following documents by July 29, 2016: "All documents relating to any of the entities and individuals listed in following chart . . . QFOR . . . Nandu Thondavadi . . . Dhru Desai," and "All documents relating to the acquisition . . . of M2 Interactive Group, Inc., or Momentum Mobile."

k. On July 21, 2016, SEC attorneys interviewed CARLUCCI by telephone. During that interview, an SEC attorney advised CARLUCCI that the SEC wanted to talk to CHRISTOPHER YOUNG as well, and asked CARLUCCI for YOUNG's contact information. CARLUCCI provided the SEC attorney with YOUNG's e-mail address.

l. On July 25, 2016, an SEC attorney sent an e-mail to CHRISTOPHER YOUNG requesting to interview YOUNG about QFOR's 2013 acquisition of Momentum Mobile and indicating that the SEC wanted to show YOUNG some documents via an online meeting.

m. On July 27, 2016, an SEC attorney sent an e-mail to CHRISTOPHER YOUNG attaching a copy of the SEC subpoena described in paragraph j.

2. Beginning in or around July 2016, and continuing until in or around September 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSHUA CARLUCCI and
CHRISTOPHER YOUNG,

defendants herein, did knowingly and intentionally conspire with Nandu Thondavadi and Dhru Desai, and with others known and unknown to the Grand Jury, to corruptly obstruct, influence, and impede an official proceeding, namely, the SEC investigation of QFOR, in violation of Title 18, United States Code, Section 1512(c)(2).

3. It was part of the conspiracy that after JOSHUA CARLUCCI received the letter and subpoena related to QFOR from the SEC, CARLUCCI told Nandu Thondavadi and Dhru Desai about the subpoena.

4. It was further part of the conspiracy that on or about July 19, 2016, Nandu Thondavadi e-mailed JOSHUA CARLUCCI and Desai, and attached a copy of AP Agreement 2, which was a fake agreement that Thondavadi created in 2013 without Momentum Mobile's knowledge or consent. The subject line of the e-mail was "Bates Stamped Doc for production," and the attached AP Agreement 2 was stamped with CARLUCCI's initials followed by page numbers. That same day, CARLUCCI responded to the e-mail and asked, "What is this? Its [sic] not even close to the agreement we signed."

5. It was further part of the conspiracy that on or about July 21, 2016, when SEC attorneys interviewed JOSHUA CARLUCCI, showed CARLUCCI a copy of AP Agreement 2, and asked CARLUCCI a number of questions about it, CARLUCCI did not tell the SEC that that CARLUCCI had just seen AP Agreement 2 for the first time two days before the interview when Thondavadi e-mailed it to him.

6. It was further part of the conspiracy that—in exchange for payments from QFOR—JOSHUA CARLUCCI and CHRISTOPHER YOUNG agreed to send Thondavadi an e-mail in 2016 falsely stating that Momentum Mobile had previously authorized and agreed to AP Agreement 2, in order to provide Thondavadi and Desai with a false paper trail that would deceive the SEC.

7. It was further part of the conspiracy that CHRISTOPHER YOUNG, in exchange for payments from QFOR, told Nandu Thondavadi and Dhru Desai that if he was interviewed by the SEC, he would tell the SEC that Momentum Mobile had previously authorized and agreed to AP Agreement 2.

8. It was further part of the conspiracy that after reviewing AP Agreement 2 in July 2016 and noticing that it called for more cash and stock than they received pursuant to the real agreement, which was AP Agreement 1, JOSHUA CARLUCCI and CHRISTOPHER YOUNG stated that, in exchange for their agreement to send Thondavadi an e-mail in 2016 falsely indicating that Momentum Mobile had previously authorized and

agreed to AP Agreement 2, they wanted Nandu Thondavadi and Dhru Desai to give them the difference in cash and stock between the two agreements.

9. It was further part of the conspiracy that JOSHUA CARLUCCI ultimately agreed to accept a total of $60,000 in cash payments from Thondavadi and Desai and CHRISTOPHER YOUNG agreed to accept a total of $102,900 in cash payments from Thondavadi and Desai, in exchange for CARLUCCI and YOUNG's agreement to send Thondavadi an e-mail in 2016 falsely stating that Momentum Mobile had previously authorized and agreed to AP Agreement 2.

10. It was further part of the conspiracy that Thondavadi and Desai agreed to send CHRISTOPHER YOUNG the difference in QFOR stock as well, which was 750,000 shares.

11. It was further part of the conspiracy that JOSHUA CARLUCCI and CHRISTOPHER YOUNG exchanged numerous e-mails with Nandu Thondavadi and Dhru Desai to cover up the reason for the 2016 payments from QFOR to CARLUCCI and YOUNG, and to make it appear that the 2016 payments were for legitimate work, including the following e-mail, which YOUNG sent on July 25, 2016 to Thondavadi and Desai:

> Documents attached. Please let me know when the same day wire transfer has been sent today for the project fee deposit and we can begin asset delivery for the initial wireframes.

12. It was further part of the conspiracy that CHRISTOPHER YOUNG attached to the July 25, 2016 e-mail (1) a document entitled "Business Advisory Agreement," which

falsely identified YOUNG as an "advisor" to QFOR and pursuant to which YOUNG purportedly agreed to "educate [QFOR] with best practices within the wellness discipline" and which identified YOUNG's fees as "$25,000 paid on 7/25/16" and "$25,000 paid on 8/1/16," and (2) an invoice from YOUNG to QFOR that billed QFOR for the two $25,000 payments, which according to the invoice were for "consulting," when in fact the funds were not related to any consulting or advisory work done by YOUNG for QFOR, as the funds were payments for YOUNG's agreement to send Thondavadi an e-mail in 2016 falsely stating that Momentum Mobile had previously authorized and agreed to AP Agreement 2.

13. It was further part of the conspiracy that on July 25, 2016, the same day that an SEC attorney e-mailed CHRISTOPHER YOUNG about interviewing YOUNG regarding QFOR, Thondavadi caused $25,000 to be transferred to YOUNG.

14. It was further part of the conspiracy that on or about July 25, 2016, Nandu Thondavadi sent the following e-mail to JOSHUA CARLUCCI, which e-mail was intended to cover up the true reason for the 2016 payments from QFOR to CARLUCCI and YOUNG: "PFA [please find attached] our development agreement. Let's connect this morning and wrap the design specs. Please complete the blanks and edit as necessary. Thanks." Thondavadi attached to the e-mail an unsigned copy of a "Business Advisory Agreement" between CARLUCCI and QFOR.

15. It was further part of the conspiracy that later that day, JOSHUA CARLUCCI responded to NANDU THONDAVADI's e-mail and wrote, "Executed agreement is attached." CARLUCCI attached a signed copy of the "Business Advisory Agreement," which falsely identified CARLUCCI as an "advisor" to QFOR and pursuant to which CARLUCCI purportedly agreed to "educate [QFOR] with best practices within the wellness discipline" and which identified CARLUCCI's fees as $60,000, when in fact the funds were not related to any consulting or advisory work done by CARLUCCI for QFOR, as the funds were payments for CARLUCCI's agreement to send Thondavadi an e-mail in 2016 falsely stating that Momentum Mobile had previously authorized and agreed to AP Agreement 2.

16. It was further part of the conspiracy that Nandu Thondavadi sent JOSHUA CARLUCCI and CHRISTOPHER YOUNG the following e-mail on July 25, 2016 (the "July 25 Thondavadi E-mail"), with a copy to Desai:

> Chris/Josh:
>
> Hope all is well. If you recall, we had extensive discussions post our acquisition of M2 assets back in 2013 and agreed to amend the original agreement specific to share count, earnout and other matters. Both you and Josh authorized us to use the previously signed and dated signature sheets for all the amendments since you were at the client site. I can't remember whether your authorization was an email or phone call or a text message. Unfortunately, I can't find any references to your authorization in my archives and would greatly appreciate it if you can forward anything you can find. If you can't, please send me an email confirming that you authorized the amendments.

17. It was further part of the conspiracy that on or about July 26, 2016, Nandu Thondavadi caused $30,000 to be transferred to JOSHUA CARLUCCI.

18. It was further part of the conspiracy that on July 26, 2016, JOSHUA CARLUCCI sent the following e-mail response to the July 25 Thondavadi E-mail: "Unfortunately I do not have access to our emails any longer, however, I spoke to Chris and he did inform me that we gave authorization to use our original signatures for amendments to the agreement."

19. It was further part of the conspiracy that on July 27, 2016, CHRISTOPHER YOUNG sent the following response to the July 25 Thondavadi e-mail:

> Nandu,
>
> I recall it being over the phone as I was traveling and neither Josh or myself had access to a computer. I remember giving permission to use our digital signature files to complete some amendments to our agreement, other than that I do not recall any specifics.
>
> Regards,
>
> Chris

20. It was further part of the conspiracy that on or about July 28, 2016, Nandu Thondavadi caused $30,000 to be transferred to JOSHUA CARLUCCI.

21. It was further part to the conspiracy that on or about July 28, 2016, Nandu Thondavadi caused $25,000 to be transferred to CHRISTOPHER YOUNG.

22. It was further part of the conspiracy that on or about August 17, 2016, Nandu Thondavadi caused $17,900 to be transferred to CHRISTOPHER YOUNG.

23. It was further part of the conspiracy that on or about August 24, 2016, Nandu Thondavadi caused 750,000 shares in QFOR stock—the difference in shares set forth in AP Agreement 1 and AP Agreement 2—to be sent via Federal Express to CHRISTOPHER YOUNG.

24. It was further part of the conspiracy that on or about September 2, 2016, Nandu Thondavadi caused $35,000 to be transferred to CHRISTOPHER YOUNG.

All in violation of Title 18, United States Code, Section 1512(k).

**COUNT TWO**

The SPECIAL JULY 2016 GRAND JURY further charges:

1. Paragraphs 1 and 3 through 24 of Count One of this indictment are incorporated here.

2. Beginning on or about July 15, 2016, and continuing until in or around August 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSHUA CARLUCCI and
CHRISTOPHER YOUNG,

defendants herein, did attempt to corruptly obstruct, influence, and impede an official proceeding, namely, the SEC investigation of QFOR by, among other things:

a. On July 25, 2016, as part of an e-mail exchange with Nandu Thondavadi that was intended to cover up the true reason for the 2016 payments from QFOR to defendant JOSHUA CARLUCCI, CARLUCCI responded to a Nandu Thondavadi's e-mail and wrote, "Executed agreement is attached." CARLUCCI attached a signed copy of a "Business Advisory Agreement," which falsely identified CARLUCCI as an "advisor" to QFOR and pursuant to which CARLUCCI purportedly agreed to "educate [QFOR] with best practices within the wellness discipline" and which identified CARLUCCI's fees as $60,000, when in fact the funds were not related to any consulting or advisory work done by CARLUCCI for QFOR, as the funds were payments for

CARLUCCI's agreement to send Thondavadi an e-mail in 2016 falsely stating that Momentum Mobile had previously authorized and agreed to AP Agreement 2.

b. On July 25, 2016, as part of an e-mail exchange with Nandu Thondavadi that was intended to cover up the true reason for the 2016 payments from QFOR to defendant CHRISTOPHER YOUNG, YOUNG wrote, "Documents attached. Please let me know when the same day wire transfer has been sent today for the project fee deposit and we can begin asset delivery for the initial wireframes." YOUNG attached to the July 25, 2016 e-mail (1) a document entitled "Business Advisory Agreement," which falsely identified YOUNG as an "advisor" to QFOR and pursuant to which YOUNG purportedly agreed to "educate [QFOR] with best practices within the wellness discipline" and which identified YOUNG's fees as "$25,000 paid on 7/25/16" and "$25,000 paid on 8/1/16," and (2) an invoice from YOUNG to QFOR that billed QFOR for the two $25,000 payments, which according to the invoice were for "consulting," when in fact the funds were not related to any consulting or advisory work done by YOUNG for QFOR, as the funds were payments for YOUNG's agreement to send Thondavadi an e-mail in 2016 falsely stating that Momentum Mobile had previously authorized and agreed to AP Agreement 2.

c. On July 26, 2016, defendant JOSHUA CARLUCCI sent the following e-mail response to the July 25 Thondavadi E-mail, which response falsely represented that Momentum Mobile had authorized AP Agreement 2: "Unfortunately I do not have access

to our emails any longer, however, I spoke to Chris and he did inform me that we gave authorization to use our original signatures for amendments to the agreement."

d. On July 27, 2016, defendant CHRISTOPHER YOUNG sent the following response to the July 25 Thondavadi e-mail, which response falsely represented that Momentum Mobile had authorized AP Agreement 2:

> Nandu,
>
> I recall it being over the phone as I was traveling and neither Josh or myself had access to a computer. I remember giving permission to use our digital signature files to complete some amendments to our agreement, other than that I do not recall any specifics.
>
> Regards,
>
> Chris

In violation of Title 18, United States Code, Section 1512(c)(2).

**COUNT THREE**

The SPECIAL JULY 2016 GRAND JURY further charges:

1. The allegations of paragraph 1 of Count One of this indictment are incorporated here.

2. On or about June 27, 2017, in an interview being conducted in Tampa, Florida, by an agent of the Federal Bureau of Investigation, in relation to an investigation being conducted in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSHUA CARLUCCI,

defendant herein, did knowingly and willfully make materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency within the executive branch of the Government of the United States, in that:

a. When interviewed by an FBI agent regarding QFOR's $60,000 in payments to CARLUCCI in July 2016, defendant JOSHUA CARLUCCI initially stated in sum and substance that the $60,000 was for consulting services CARLUCCI agreed to provide to QFOR and later stated in sum and substance that the he could not recall why QFOR paid him $60,000, when in truth and fact, defendant JOSHUA CARLUCCI well knew that QFOR paid him $60,000 in exchange for his agreement to send Thondavadi an e-mail in 2016 falsely stating that Momentum Mobile had previously authorized and agreed to AP Agreement 2.

b. When interviewed by an FBI agent regarding AP Agreement 2, defendant JOSHUA CARLUCCI stated in sum and substance that he had never seen AP Agreement 2 before an SEC attorney showed it to CARLUCCI during a July 2016 interview, when in truth and fact, defendant JOSHUA CARLUCCI well knew that he reviewed AP Agreement 2 when Nandu Thondavadi e-mailed AP Agreement 2 to him, which was two days before the interview with the SEC attorney;

In violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL:

________________________________
FOREPERSON

________________________________
ACTING UNITED STATES ATTORNEY